******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GRUENDEL, J., dissenting. Distilled to its essence, this case concerns a return date that was two days too late. The question presented under the unique facts of this case is one of first impression: may a plaintiff, who properly files a return of service with the court in accordance with General Statutes § 52-46a but later is apprised of a defect with respect to the return date on his writ of summons and complaint, utilize the curative provision of General Statutes § 52-72 to both (1) serve an amended summons and complaint on the defendants, and (2) file that amended summons and complaint with the court nunc pro tunc to ensure compliance with § 52-46a? Because any defects with respect to legal process in this case are technical in nature, rather than substantive, and mindful of this court's obligation to strictly construe that remedial statute in favor of the plaintiff, I would answer that query in the affirmative. Accordingly, I respectfully dissent from the majority opinion.

The plaintiff, Nino Ribeiro, appeals from the judgment of the trial court dismissing his action against the defendants Fidelity National Title Insurance Company, Chicago Title Insurance Company, and Bank of America, N.A.[1] The plaintiff claims that the court improperly dismissed the action for lack of personal jurisdiction due to his failure to comply with General Statutes § 52-48 (b).

The underlying facts are not disputed. The plaintiff's complaint alleges that the plaintiff and the law firm of Fasano, Ippolito & Lee, P.C. (law firm), entered into a contract whereby Attorney Alphonse Ippolito agreed to represent the plaintiff in connection with the purchase and development of real property known as 339 Greene Street in New Haven (property). The complaint further alleged that pursuant to the contract, the law firm and Ippolito agreed to secure, inter alia, an easement from an adjacent property located at 329 Greene Street to enable the plaintiff "to tap into and use the existing water and sewer lines and pipes" that ran through that property. Ippolito and the law firm represented the plaintiff at the March 29, 2007 closing on the property. At that time, the owner of the adjacent property executed a utility easement that Ippolito had drafted. That owner thereafter refused to allow the plaintiff to tap into the water and sewer lines that transect its property. In so doing, it relied on the language contained in the utility easement drafted by Ippolito.

This civil action followed. The plaintiff's complaint consisted of three counts. The first count sounds in breach of contract against the law firm and Ippolito. In the second and third counts, the plaintiff alleged that because the law firm and Ippolito also "represented the

interests of and acted as and were the agents for" the defendants "at all times in connection with their representation of [the plaintiff] and in connection with [his] financing and purchase of the property," the defendants were "liable to [him] for the damages he sustained as a result of the breaches, errors and/or omissions committed" by the law firm and Ippolito.

The plaintiff's writ of summons and complaint were dated March 26, 2013. The return date specified on that summons and complaint was May 28, 2013. It is undisputed that the return date exceeded by two days the two month time period set forth in § 52-48 (b).[2] The plaintiff then filed his return of service with the Superior Court on May 21, 2013. In so doing, he fully complied with § 52-46a, as that filing was made more than six days prior to the specified return date.[3]

On June 26 and June 27, 2013,[4] the defendants filed respective motions to dismiss the action for lack of jurisdiction, claiming that the return date specified on the plaintiff's summons failed to comply with the requirements of § 52-48 (b).[5] In response, the plaintiff filed a request for leave to "amend, serve and file" legal process pursuant to § 52-72.[6] That request was twofold in nature, as the plaintiff sought to avail himself of that remedial statute to simultaneously (1) serve on the defendants an amended writ of summons and complaint that revised the return date to May 21, 2013, and (2) file that amended writ of summons and complaint "nunc pro tunc on May 14, 2013 . . . ."[7] (Emphasis omitted.) The defendants opposed that request. The court heard argument on the plaintiff's request on September 23, 2013.

In its November 29, 2013 memorandum of decision, the court acknowledged the plaintiff's claim that § 52-72 (a) "gives him the opportunity to amend the return date of his writ of summons and complaint nunc pro tunc because the language [of that statute] implies that [it] covers both defects in the return date as well as defects in the date of the return of the writ of summons and complaint." (Emphasis omitted.) The court nevertheless did not explicitly decide the propriety of that claim. Instead, the court reasoned that "[i]n the present case . . . process was signed . . . on March 26, 2013, and the return date was set at May 28, 2013. Since this return date is two months and two days past the date on which process was signed, it is outside the two month requirement in § 52-48 (b). The plaintiff then returned process to this court on May 21, 2013, in compliance with § 52-46a,[8] as May 21 is at least six days prior to the return date of May 28, 2013. The return of process here on May 21 . . . cannot be amended to be in agreement with both § 52-46a and § 52-48 (b), as it must be. Moreover, since the return date to this court must be on a Tuesday, as stated in § 52-48 (a), moving the May 28 [return] date back one week to a Tuesday

would make the return date fall on May 21, the same date as the return of process, resulting in noncompliance with § 52-46a. Also, if the return date is to be pushed forward to the following Tuesday, or June 4, 2013, the two month limit between June 4, 2013, and the date process was signed on March 26 would still be contravened. Due to the original return date of May 28, 2013, on the writ of summons and complaint, and the date on which the plaintiff returned process to this court on May 21, 2013, there is no date to which the court can amend the return date and remain in compliance with the requirements of both § 52-48 (b) and § 52-46a." (Footnote added.) The court thus granted the motions to dismiss, concluding that it lacked personal jurisdiction over the defendants. From that judgment, the plaintiff appealed to this court.

I

At the outset, I note that although the record before us does not contain an explicit ruling on the plaintiff's request to file his amended return of process "nunc pro tunc on May 14, 2013"; (emphasis omitted); the plaintiff in his principal appellate brief submits—and the defendants do not disagree—that the court implicitly denied that request in its memorandum of decision. I agree. Indeed, the court's memorandum of decision can only be read to include such a denial. The return date specified on the plaintiff's summons did not comply with § 52-48 (b), as it fell outside the two month period specified therein. Under Connecticut law, a party is entitled to amend a defective return date pursuant to § 52-72; *Coppola* v. *Coppola*, 243 Conn. 657, 664–67, 707 A.2d 281 (1998); though "[a]mended process must still comply with § 52-46a and be returned at least six days before the return date." Id., 666 n.11. Accordingly, if the court *had* granted the plaintiff's request to file his amended return of process nunc pro tunc on May 14, 2013, his amendment of the return date to May 21, 2013, would have resulted in compliance with § 52-46a.

It nevertheless remains that the court specifically found that, even if the return date was amended pursuant to § 52-72, "there is no date to which the court can amend the return date and remain in compliance with the requirements of both § 52-48 (b) and § 52-46a." Mindful that, in the face of a silent record, "we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law"; *S & S Tobacco & Candy Co.* v. *Greater New York Mutual Ins. Co.*, 224 Conn. 313, 322, 617 A.2d 1388 (1992); I agree with the parties that a denial of the plaintiff's request to file his amended summons and complaint nunc pro tunc emanates from the court's memorandum of decision. Absent such a ruling, the court could not have determined that § 52-72 did not operate to save the plaintiff's action against the defendants. See *Concept Associates, Ltd.* v. *Board of Tax Review*, 229 Conn. 618,

626, 642 A.2d 1186 (1994) (curative provision of § 52-72 [a] "is mandatory rather than directory"); *Olympia Mortgage Corp.* v. *Klein*, 61 Conn. App. 305, 309–10, 763 A.2d 1055 (2001) (§ 52-72 cured defect in process made returnable more than two months from date of service of process).

## II

The plaintiff contends that the court improperly determined that it lacked personal jurisdiction over the defendants due to his noncompliance with § 52-48 (b). Our Supreme Court has stated that "[a] defect in process . . . such as an improperly executed writ, implicates personal jurisdiction . . . ." *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 848 A.2d 418 (2004). "Because a challenge to the personal jurisdiction of the trial court is a question of law, our review is plenary." *Myrtle Mews Assn., Inc.* v. *Bordes*, 125 Conn. App. 12, 15, 6 A.3d 163 (2010).

With that standard in mind, I turn to the unique procedural facts of this case. In response to the motions to dismiss filed by the defendants predicated on a defective return date, the plaintiff sought leave, pursuant to § 52-72, to simultaneously (1) serve an amended summons and complaint on those parties, and (2) file that amended summons and complaint with the court nunc pro tunc. The defendants concede, consistent with established precedent, that the plaintiff is entitled to amend the return date pursuant to § 52-72 so as to comply with § 52-48 (b). See, e.g., *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 229 Conn. 621–26; *Olympia Mortgage Corp.* v. *Klein*, supra, 61 Conn. App. 309–10. Accordingly, the dispositive question is whether the plaintiff also is entitled, under § 52-72, to file his amended writ of summons and complaint "nunc pro tunc on May 14, 2013"; (emphasis omitted); to ensure compliance with § 52-46a. The plaintiff's claim presents an issue of first impression for the appellate courts of this state.[9]

"Whether the defect in the present case can be cured under § 52-72 is a question of statutory interpretation that also requires our plenary review." *New England Road, Inc.* v. *Planning & Zoning Commission*, 308 Conn. 180, 185, 61 A.3d 505 (2013). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratex-

tual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 10, 961 A.2d 373 (2009).

In accordance with § 1-2z, I begin with the plain language of the statute. Section 52-72 (a) provides: "Upon payment of taxable costs, any court shall allow a proper amendment to civil process which is for any reason defective." For purposes of resolving the defendant's claim, the critical language is "civil process which is for any reason defective." The majority suggests that this language encompasses only defects with respect to the writ of summons, the complaint and any attachments thereto, and therefore concludes that a plaintiff's filing of those materials with the court pursuant to § 52-46a is not subject to the curative provision of § 52-72.[10] Admittedly, that strict interpretation is a plausible one.

At the same time, the appellate courts of this state have suggested a broader reading of defective civil process, as that terminology is used in § 52-72, which encompasses a plaintiff's return of process to the court pursuant to § 52-46a. See, e.g., *New England Road, Inc.* v. *Planning & Zoning Commission*, supra, 308 Conn. 186 (expressing agreement with proposition that "the remedial aspects of § 52-72 have been limited to amending defects in the return date or the return of process to court" and noting that "[i]n prior cases, we have applied § 52-72 to cure . . . defects in the return date or the [untimely] return of process to court"); *Coppola* v. *Coppola*, supra, 243 Conn. 662 (rejecting claim that § 52-72 "does not encompass a late return of process"); cf. *Young* v. *Bridgeport*, 135 Conn. App. 699, 709, 42 A.3d 514 (2012) (explaining that General Statutes "§§ 52-45a *through* 52-72 . . . prescribe the manner and means by which service of civil process is to be accomplished" [emphasis added]). That precedent suggests that defects with respect to the return of process to the court are within the purview of § 52-72.

As a result, the relevant language of § 52-72 is susceptible to more than one reasonable interpretation and ambiguous as applied to the facts of this case. In construing § 52-72, this court therefore must consider "the legislative history of the statute and the circumstances surrounding its enactment, the legislative policy it was designed to implement, the statute's relationship to existing legislation and common-law principles governing the same general subject matter."[11] *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 742, 865 A.2d 428 (2005).

In so doing, this court is bound by the well established principle that, in construing a statute that is remedial in nature, "any ambiguities should be resolved in a manner that furthers, rather than thwarts, the [statute's] remedial purposes." (Internal quotation marks omit-

ted.) *Finkle* v. *Carroll*, 315 Conn. 821, 831, 110 A.3d 387 (2015); see also *Vincent* v. *New Haven*, 285 Conn. 778, 792, 941 A.2d 932 (2008) (same); *Commissioner of Labor* v. *C.J.M. Services, Inc.*, 73 Conn. App. 39, 53, 806 A.2d 1105 (2002) ("[a]mbiguities in a remedial statute must be resolved in favor of the persons whom the statute is intended to protect"), rev'd in part, 268 Conn. 283, 842 A.2d 1124 (2004). Furthermore, "in interpreting the language of § 52-72, we do not write on a clean slate, but are bound by . . . previous judicial interpretations of this language and the purpose of the statute." *New England Road, Inc.* v. *Planning & Zoning Commission*, supra, 308 Conn. 186. The purpose of this statute, as articulated in prior judicial interpretations thereof, therefore demands attention.

Our Supreme Court has stated that "[t]he purpose of [§ 52-72] is to provide for amendment of otherwise incurable defects that go to the court's jurisdiction." *Hartford National Bank & Trust Co.* v. *Tucker*, 178 Conn. 472, 478–79, 423 A.2d 141 (1979), cert. denied, 445 U.S. 904, 100 S. Ct. 1079, 63 L. Ed. 2d 319 (1980). Section 52-72 is "a remedial statute [that] must be liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 229 Conn. 623. "The legislature, in enacting § 52-72, expressed an intent to reject the draconian result of dismissal of the plaintiff's cause of action" because of defective process. *Coppola* v. *Coppola*, supra, 243 Conn. 665. As the court explained: "[S]tatutes such as § 52-72 were intended to take the sharp edges off the common law . . . . Centuries ago the common law courts of England . . . insisted upon rigid adherence to the prescribed forms of action, resulting in the defeat of many suits for technical faults rather than upon their merits. Some of that ancient jurisprudence migrated to this country . . . and has affected the development of procedural law in this state. . . . [H]owever, our legislature enacted numerous procedural reforms applicable to ordinary civil actions that are designed to ameliorate the consequences of many deviations from the prescribed norm, which result largely from the fallibility of the legal profession, in order generally to provide errant parties with an opportunity for cases to be resolved on their merits rather than dismissed for some technical flaw." (Citation omitted; internal quotation marks omitted.) Id., 664–65.

In furtherance of that salutary aim, our Supreme Court has "refused to permit the recurrence of the inequities inherent in eighteenth century common law that denied a plaintiff's cause of action if the pleadings were technically imperfect." *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 399, 655 A.2d 759 (1995). For that reason, the court has held that the curative provision of § 52-72 (a) "is mandatory rather than directory . . . ." (Footnote omitted.) *Concept*

*Associates, Ltd.* v. *Board of Tax Review*, supra, 229 Conn. 626; see also *Kobyluck* v. *Planning & Zoning Commission*, 84 Conn. App. 160, 168, 852 A.2d 826 ("[§] 52-72 requires the trial court to allow a proper amendment to defective process"), cert. denied, 271 Conn. 923, 859 A.2d 579 (2004).

In addition, this court must be mindful that the Supreme Court, in interpreting § 52-72, has emphasized its "expressed policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his or her day in court." (Internal quotation marks omitted.) *Coppola* v. *Coppola*, supra, 243 Conn. 665. "Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. . . . For that reason, [a] trial court should make every effort to adjudicate the substantive controversy before it, and, where practicable, should decide a procedural issue so as not to preclude hearing the merits of an appeal." (Citations omitted; internal quotation marks omitted.) *Egri* v. *Foisie*, 83 Conn. App. 243, 250, 848 A.2d 1266, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004); accord *Kobyluck* v. *Planning & Zoning Commission*, supra, 84 Conn. App. 166 ("[o]ur preference is to avoid a termination of proceedings due to mere technical imperfection"). This court also must heed the principle that "a court should . . . make every presumption favoring jurisdiction" in deciding a motion to dismiss predicated on defective civil process. *Olympia Mortgage Corp.* v. *Klein*, supra, 61 Conn. App. 310.

The present case is not one in which the plaintiff failed to file his return of process with the court; it is undisputed that he did so on May 21, 2013. The only defect arising from the plaintiff's commencement of this civil action—and the only one identified by the defendants in their motions to dismiss—is a return date that was two days too late under § 52-48 (b). The sole issue, then, is whether the plaintiff, once alerted to the defective return date on his summons, could utilize § 52-72 both to amend his summons and complaint, and to file the same "nunc pro tunc on May 14, 2013"; (emphasis omitted); to ensure compliance with § 52-46a. I would answer that query in the affirmative.

First, I note that our Supreme Court has held that § 52-72 may be utilized to amend a return date to correct a plaintiff's failure to return civil process at least six days before the return date, as required by § 52-46a. *Coppola* v. *Coppola*, supra, 243 Conn. 664. That remedial statute thus operates to alleviate the harsh result of dismissal due to technical noncompliance with the return of process requirements of § 52-46a, as well as the return date requirements of § 52-48 (b). If the return date may be amended under § 52-72 to secure compliance with § 52-46a, I perceive little reason why a party

should be precluded from filing its amended writ of summons and complaint nunc pro tunc for that very same purpose. As the Supreme Court recently noted, "[i]n prior cases, we have applied § 52-72 to cure . . . defects in the return date or the [untimely] return of process to the court."[12] *New England Road, Inc.* v. *Planning & Zoning Commission*, supra, 308 Conn. 186. Permitting the plaintiff to utilize § 52-72 to file his amended summons and complaint with the court "nunc pro tunc on May 14, 2013"; (emphasis omitted); comports with that precedent.

Second, it is axiomatic that we must construe § 52-72 "in a manner that will not thwart its intended purpose . . . ." (Internal quotation marks omitted.) *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 229 Conn. 624. The purpose of § 52-72 is to "provide for amendment of otherwise incurable defects that go to the court's jurisdiction"; *Hartford National Bank & Trust Co.* v. *Tucker*, supra, 178 Conn. 479; and avoid the "draconian result" of dismissal of a plaintiff's action due to defective process. *Coppola* v. *Coppola*, supra, 243 Conn. 665. Denying the plaintiff's request to file his amended summons and complaint with the court nunc pro tunc impedes that remedial purpose and deprives the litigant of his day in court due to technical imperfection.

I respectfully disagree with the defendants and the majority that the plaintiff's request to file his amended summons and complaint nunc pro tunc is substantive, rather than technical, in nature. See *New England Road, Inc.* v. *Planning & Zoning Commission*, supra, 308 Conn. 189 ("the intent of the legislature [in enacting § 52-72] was to permit cure of technical, rather than substantive, defects"). This is not a case in which the defect in the plaintiff's legal process arose from a failure to return service to the court. Rather, the sole defect was a tardy return date. Once alerted to that deficiency, the plaintiff sought recourse under § 52-72 to serve an amended summons and complaint on the defendants. He further sought to file that amended process with the court nunc pro tunc on May 14, 2013. Accordingly, this is not a case in which the plaintiff has sought to "alter, after the fact, the date" on which his original writ of summons and complaint was filed with the court, as the majority suggests. He simply wanted to file his new process nunc pro tunc to secure compliance with § 52-46a, the necessity of which arose solely from his defective return date.

In that regard, I note that our Supreme Court recently held that the "failure to attach a summons or citation to the complaint [is] a substantive defect [and] not the type of technical defect that is amendable pursuant to § 52-72." *New England Road, Inc.* v. *Planning & Zoning Commission*, supra, 308 Conn. 194. In so doing, the court relied on its prior holding in *Hillman* v. *Green-*

*wich*, 217 Conn. 520, 587 A.2d 99 (1991). In *Hillman*, the court explained that "a writ of summons is a statutory prerequisite to the commencement of a civil action. . . . [I]t is an essential element to the validity of the jurisdiction of the court. . . . Although the writ of summons need not be technically perfect, and need not conform exactly to the form set out in the Practice Book . . . the plaintiff's complaint must contain the basic information and direction normally included in a writ of summons." (Citations omitted.) Id., 526. The court thus reasoned that "[b]ecause the plaintiff . . . *failed to comply in any fashion* with these basic requirements . . . the trial court should have granted the defendant's motion to dismiss the complaint . . . for lack of personal jurisdiction . . . ."[13] (Emphasis added.) Id. At the same time, the appellate courts of this state have permitted plaintiffs to cure defects in writs of summons when they complied, in some fashion, with that statutory requirement.[14] See, e.g., *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 229 Conn. 621–26 (permitting amendment of defect in writ of summons under § 52-72 when plaintiff had served summons on defendants and filed return of process with court); *Olympia Mortgage Corp.* v. *Klein*, supra, 61 Conn. App. 306–10 (same). Accordingly, our courts have distinguished, in considering the operation of § 52-72, between an absolute failure to comply with the statutory prerequisite of serving a writ of summons, on the one hand, with a plaintiff's compliance, albeit defective, on the other. That precedent instructs that the former is substantive in nature and not susceptible to amendment under § 52-72, while the latter is technical in nature and amendable thereunder.

That reasoning informs the analysis in the present case. While the return of a writ of summons and complaint to the court is, like the service of a writ, a statutory imperative, it remains that the plaintiff in this case complied with that requirement. In its memorandum of decision, the trial court made an express finding to that effect. Neither the defendants nor the majority have presented any sound basis to depart from the aforementioned reasoning in considering whether the plaintiff's request to file his amended summons and complaint nunc pro tunc is technical, rather than substantive, in nature.

Furthermore, it bears emphasis that § 52-72 is a remedial statute that allows "for the correction of procedural defects . . . where no prejudice had occurred and where there was no impediment to the progress of the case . . . ." *Willamette Management Associates, Inc.* v. *Palczynski*, 134 Conn. App. 58, 68, 38 A.3d 1212 (2012). This court has noted situations in which a "defendant discovered the defect immediately and had not pleaded responsively at the time that the case was dismissed . . . thus, amendment [pursuant to § 52-72] would not have prejudiced the defendant's ability to

plead responsively. . . . All substantive allegations in the complaint remained precisely the same. . . . The defendant's substantive rights were not affected by the amendment . . . ." (Citation omitted.) Id.; accord *Hartford National Bank & Trust Co.* v. *Tucker*, supra, 178 Conn. 478 ("[t]he amended return only made the original more specific; it did not deny the defendant his right to notice of the complaint's allegations"). That is precisely the case here. Although one can envision a scenario in which the filing of an amended writ of summons and complaint nunc pro tunc could materially affect the interests of a party—such as when such filing impacts the operation of a statute of limitation—the undisputed facts of this case disclose no such impairment. Neither the defendants nor the majority has identified any substantive interest implicated by what, in essence, is a request to backdate the filing of an amended pleading. As was the case in *Coppola* v. *Coppola*, supra, 243 Conn. 666, the defendants in the present case "received actual notice of the cause of action within the statutory time frame" and would "[suffer] no prejudice as a result" of the filing of the amended summons and complaint nunc pro tunc. Because the proposed filing of the plaintiff's amended summons and complaint nunc pro tunc does not affect the substantive rights of the defendants in any manner, and because it is undisputed that the plaintiff complied with the statutory prerequisite of § 52-46a in filing his original process with the court, I would conclude that the plaintiff's request to file his amended summons and complaint nunc pro tunc is technical, rather than substantive, in nature, and thus within the purview of § 52-72.

Third, denying the plaintiff's request to file his amended summons and complaint with the court nunc pro tunc, which results in the dismissal of his action for lack of personal jurisdiction, also leads to an unfortunate result and one "contrary to basic principles of judicial economy and efficiency . . . ." *Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 17–18, 905 A.2d 55 (2006). Like § 52-72, the accidental failure of suit statute; General Statutes § 52-592; is a remedial statute designed to alleviate the harsh effects of a judgment of dismissal for lack of jurisdiction. Commonly known as the "saving statute"; see, e.g., *Peabody N.E., Inc.* v. *Dept. of Transportation*, 250 Conn. 105, 116, 735 A.2d 782 (1999); *Tellar* v. *Abbott Laboratories, Inc.*, 114 Conn. App. 244, 250, 969 A.2d 210 (2009); § 52-592 (a) provides in relevant part that a plaintiff whose "action has been dismissed for want of jurisdiction . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment." Thus, due to the legislative grace embodied in § 52-592, the parties, at the end of the day, likely will end up once again before the trial court despite the present

dismissal for technical imperfection—albeit at significant expense, in both time and resources, to the litigants *and* the court. Cognizant of our obligation to interpret § 52-72 in a manner consistent with existing legislation evincing a similar legislative policy; see *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014); that inefficient result further informs my interpretation of § 52-72 under the facts of this case.[15] See *Vibert* v. *Board of Education*, 260 Conn. 167, 177, 793 A.2d 1076 (2002) (refusing to interpret statute in way that would lead to bizarre result).

Finally, I note that § 52-72 is a remedial statute that allows "for the correction of procedural defects . . . where no prejudice had occurred and where there was no impediment to the progress of the case . . . ." *Willamette Management Associates, Inc.* v. *Palczynski*, supra, 134 Conn. App. 68; see also *Coppola* v. *Coppola*, supra, 243 Conn. 666 ("[i]t is undisputed that the defendant received actual notice of the cause of action within the statutory time frame [and] suffered no prejudice as a result of the late return of process"); *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 229 Conn. 625–26 (emphasizing that "the defendants do not claim that the plaintiff's motion to amend . . . prejudiced them"); *Merrill* v. *NRT New England, Inc.*, 126 Conn. App. 314, 322, 12 A.3d 575 (2011) (plaintiff's amendment of return date "in an effort to conform to § 52-46a . . . did not deprive the defendants of any substantive rights, nor did the defendants suffer any prejudice"), appeal dismissed, 307 Conn. 638, 59 A.3d 171 (2013) (certification improvidently granted). The defendants have advanced no claim of prejudice, nor can I conceive of any, resulting from the plaintiff's request to file his amended summons and complaint nunc pro tunc in the present case.

The defendants claim, and the majority concludes, that the court properly determined that "the return of process date . . . cannot be amended to be in agreement with both § 52-46a and § 52-48 (b), as it must be." Underlying that conclusion are two critical presumptions. First, that conclusion presumes that the plaintiff's August 6, 2013 request for leave sought to amend the date he filed his original, and defective, summons and complaint. That presumption is contrary to the plain language of the plaintiff's request, which sought "permission to amend and serve his writ of amended summons and complaint *and file same with the court nunc pro tunc* . . . ." (Emphasis altered.) Put simply, the plaintiff did not request leave to amend the date his original summons and complaint were filed—he requested leave to file his new, amended summons and complaint with the court nunc pro tunc to secure compliance with § 52-46a due solely to a defect concerning his original return date.[16]

Second, that conclusion presumes that the two requests must be adjudicated sequentially under § 52-72. I decline to read that statute in such a narrow fashion and instead adhere to established precedent dictating that § 52-72 is a remedial statute that must be liberally construed in favor of the plaintiff. *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 229 Conn. 623. Moreover, it remains that the plaintiff sought leave to simultaneously (1) amend the return date and serve an amended summons and complaint on the defendants, and (2) file that amended summons and complaint with the court nunc pro tunc. Both aspects of that request are consistent with the precedent of this state's highest court indicating that § 52-72 properly is utilized to amend "defects in the return date or the return of process to court." *New England Road, Inc.* v. *Planning & Zoning Commission*, supra, 308 Conn. 186. Although that court has indicated that "[a]mended process must still comply with § 52-46a and be returned at least six days before the return date"; *Coppola* v. *Coppola*, supra, 243 Conn. 666 n.11; the plaintiff's simultaneous requests served to ensure compliance therewith. In light of our obligation to liberally construe that statute, as well as the expressed policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his or her day in court, I eschew the narrow and technical construction of § 52-72 espoused by the defendants and the majority. Had the court in the present case granted the plaintiff's request "for leave to amend, serve and file writ of summons and complaint nunc pro tunc"; (emphasis omitted); the return date on his amended complaint would have been May 21, 2013, and the date of his return of that process to the court would have been May 14, 2013, thereby complying fully with both §§ 52-46a and 52-48 (b). Moreover, no prejudice would have inured to the defendants.

Also misplaced is the defendants' reliance on *Rogozinski* v. *American Food Service Equipment Corp.*, 211 Conn. 431, 559 A.2d 1110 (1989), in support of their contention that § 52-72 may not be utilized to amend the date of the plaintiff's return of process. Decided more than one-quarter century ago, *Rogozinski* concerned a request to amend a late return of process pursuant to General Statutes § 52-123.[17] Only four pages in length, *Rogozinski*'s concise analysis is understandable, as the plaintiff's claim required little discussion. Noting that § 52-123 "is used to provide relief from defects in the text of the writ itself but is not available to cure irregularities in the service or return of process," the court held that the plaintiff could not obtain recourse under that statute to remedy a defective return of process. Id., 434. The court noted that circumstantial defects, as that term of art is used in § 52-123, are "uniformly limited . . . to defects in the writ."[18] Id., 435. The court contrasted such circumstantial defects with "defects in the process [that] are voidable and

therefore subject to abatement," intimating that the plaintiff's request involved such a defect.[19] Id. Significantly, *Rogozinski* makes no mention whatsoever of § 52-72. In addition, that case predates the liberal interpretation of § 52-72 articulated in *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 229 Conn. 618, *Coppola* v. *Coppola*, supra, 243 Conn. 657, and their progeny. *Rogozinski* therefore has little relevance to the issue of first impression presently before this court regarding the proper construction of § 52-72.

Section 52-72 is a remedial statute that must be liberally construed. *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 229 Conn. 623. As such, this court is obligated to resolve any ambiguity in that statute in favor of the plaintiff; see *Commissioner of Labor* v. *C.J.M. Services, Inc.*, supra, 73 Conn. App. 53; and in a manner that furthers its remedial purposes. *Vincent* v. *New Haven*, supra, 285 Conn. 792. In the present case, it is undisputed that the only defect with the plaintiff's civil process was a return date that was two days too late. See footnotes 3 and 4 of this dissenting opinion. This case thus presents the precise scenario that § 52-72 was enacted to address. See *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 623 (legislative intent "in enacting § 52-72 was to prevent the loss of jurisdiction merely because of a defective return date").

Moreover, our Supreme Court has recognized that the curative provision of § 52-72 properly is utilized to amend, inter alia, "defects in . . . the return of process to court." *New England Road, Inc.* v. *Planning & Zoning Commission*, supra, 308 Conn. 186. For that reason, the plaintiff requested leave to "amend, serve and file" legal process pursuant to § 52-72. Our Supreme Court has instructed that "in in interpreting the language of § 52-72, we do not write on a clean slate, but are bound by . . . the purpose of the statute." (Internal quotation marks omitted.) *New England Road, Inc.* v. *Planning & Zoning Commission*, supra, 186. In light of this court's obligation to liberally construe that remedial statute in favor of the plaintiff, I would conclude that "civil process which is for any reason defective," as that terminology is used in § 52-72 (a), encompasses both the plaintiff's request to serve an amended writ of summons and complaint on the defendants, and his request to file the same with the court "nunc pro tunc on May 14, 2013 . . . ." (Emphasis omitted.) To quote *Coppola*, that construction "effectuates the statute's remedial purpose and statutory policy of amend[ing] . . . otherwise incurable defects that go to the court's jurisdiction." (Internal quotation marks omitted.) *Coppola* v. *Coppola*, supra, 243 Conn. 665. I therefore would reverse the judgment of the trial court dismissing the action against the defendants for lack of personal jurisdiction.

[1] Also named as defendants in the plaintiff's complaint were Fasano, Ippolito & Lee, P.C., and Alphonse Ippolito. They are not parties to this

appeal. I therefore refer to Fidelity National Title Insurance Company, Chicago Title Insurance Company, and Bank of America, N.A., collectively, as the defendants in this opinion.

[2] General Statutes § 52-48 (b) provides: "All process shall be made returnable not later than two months after the date of the process and shall designate the place where court is to be held."

[3] In its memorandum of decision, the court made an express finding that the plaintiff's return of service complied with § 52-46a.

[4] At that time, the defendants had not filed any responsive pleadings.

[5] The only defect alleged by the defendants concerned the tardy return date.

[6] The plaintiff's pleading is titled "Request for Leave to Amend, Serve and File Writ of Summons and Complaint Nunc Pro Tunc." (Emphasis omitted.) It states in relevant part that the plaintiff "hereby requests, pursuant to [§] 52-72, permission to amend and serve his writ of amended summons and complaint and file same with the court *nunc pro tunc*, thereby amending his complaint dated March 26, 2013 and making it returnable May 21, 2013 and filed *nunc pro tunc* on May 14, 2013." (Emphasis in original.) Appended to that request was an amended summons and complaint, as well as a proposed order form. Significantly, the plaintiff's pleading did not request to amend the date that his original summons and complaint was filed. Rather, he simply sought leave to file his new, amended summons and complaint with the court "nunc pro tunc on May 14, 2013 . . . ." (Emphasis omitted.)

[7] Black's Law Dictionary defines "nunc pro tunc" as "[h]aving retroactive legal effect through a court's inherent power . . . ." Black's Law Dictionary (7th Ed. 1999) p. 1097. It literally means "now for then." Ballantine's Law Dictionary (3d Ed. 1969) p. 873; see, e.g., *Ridpath* v. *Board of Governors Marshall University*, 447 F.3d 292, 303 (4th Cir. 2006) (noting that "the district court authorized the filing of the [a]mended [c]omplaint, nunc pro tunc" [emphasis omitted]).

[8] General Statutes § 52-46a requires that process in civil actions returnable to the Superior Court shall be returned "to the clerk of such court at least six days before the return day."

[9] In its appellate brief, Bank of America, N.A., claims that the plaintiff failed to brief the issue of whether the court improperly denied his request to file his amended summons and complaint nunc pro tunc on May 14, 2013, and thus has abandoned that issue. I disagree. It is plain to us that such a challenge permeates the plaintiff's principal appellate brief. Throughout that brief, the plaintiff argues that the court improperly determined that he could not amend and file legal process nunc pro tunc so as to comply with those statutes. Specifically, on page thirteen of his brief, the plaintiff claims that the court "erroneously decided that [his] request for leave to amend the return [date] and the date the writ of summons and complaint were filed is precluded" under Connecticut law. The plaintiff then proceeds to discuss various decisions articulating the remedial purpose of § 52-72 before ultimately concluding that his request for leave to amend "falls squarely within the meaning of [§] 52-72 and may be corrected by amendment." I therefore reject the assertion that the plaintiff has abandoned that claim due to inadequate briefing. Because it addresses the merits of the plaintiff's claim, I presume the majority has done so as well.

[10] The majority opinion cites *Morgan* v. *Hartford Hospital*, 301 Conn. 388, 402–403, 21 A.3d 451 (2011), in support of its narrow construction of defective civil process under § 52-72. *Morgan* does not cite to or involve § 52-72 in any manner. Rather, that case concerned civil process in the context of written opinion letters of similar health care providers that "must be attached to the complaint" pursuant to General Statutes § 52-190a. Id., 402. As such, *Morgan* is inapposite to the present case, in which this court considers "civil process which is for any reason defective," as that terminology is used in § 52-72.

[11] The legislative history of § 52-72 sheds minimal light on the issue before us. In 2012, the legislature enacted House Bill No. 5365, entitled "An Act Concerning Court Operations and Victim Services," which addressed "certain circumstances that have occurred or to correct certain potential discrepancies . . . in order to allow [the Judicial Branch] to effectuate things more smoothly." 55 H.R. Proc., Pt. 18, 2012 Sess., p. 5841, remarks of Representative Gerald M. Fox III. That legislation included a revision to § 52-72 (a), which previously required our courts to "allow a proper amendment to civil process which has been made returnable to the wrong return day or is for any other reason defective, upon payment of costs taxable upon sustaining a plea in abatement." General Statutes (Rev. to 2009) § 52-72 (a). By removing

the specific reference to the "return day" and opting for a more general statement regarding "civil process which is for any reason defective," the legislature made it clear that the remedial provision contained in § 52-72 is not limited to curing defects with respect to a specified return date.

[12] In *New England Road, Inc.*, the Supreme Court described the holding of *Coppola* as follows: "[I]n *Coppola* v. *Coppola*, [supra, 243 Conn. 661], the plaintiff claimed that § 52-72 permitted the amendment of the return date to correct a failure to return civil process to the court at least six days prior to the return date as required by [§] 52-46a. In response, the defendant claimed that the return date was proper and that the plaintiff was simply late in returning process, a flaw which § 52-72 was not intended to amend. . . . The defendant therefore claimed that the phrase for any other reason defective did not encompass the late return of process. . . . This court agreed with the plaintiff and concluded that a construction of the term defective to permit an amendment of the return date to correct the failure to return the process in a timely fashion effectuates the statute's remedial purpose and statutory policy of amend[ing] . . . otherwise incurable defects that go to the court's jurisdiction." (Citations omitted; footnote omitted; internal quotation marks omitted.) *New England Road, Inc.* v. *Planning & Zoning Commission*, supra, 308 Conn. 188.

[13] As our Supreme Court has explained, the failure to include a summons or citation in the service of process is substantive in nature because it implicates "due process concerns"; *New England Road, Inc.* v. *Planning & Zoning Commission*, supra, 308 Conn. 192; and therefore likely prejudices a defendant.

[14] In *Coppola* v. *Coppola*, supra, 243 Conn. 660, the plaintiff complied in some fashion with § 52-46a by filing her return of process with the Superior Court, albeit belatedly.

[15] In response to my invocation of the accidental failure of suit statute, the majority cites to *Rogozinski* v. *American Food Service Equipment Corp.*, 211 Conn. 431, 559 A.2d 1110 (1989), a case that makes no mention of § 52-72 and suggests in dictum that the existence of § 52-592 obviates the need for relief under a remedial statute for defective return of process to the court. Id., 435 n.2. Yet it remains that § 52-592 (a) is not confined to defects with respect to return of process—it applies to a plaintiff whose "action has been dismissed for want of jurisdiction . . . ." That remedial provision thus applies not only to defective return of process, but also to defective service of writs of summons and complaints, which likewise expose a plaintiff to a dismissal for lack of jurisdiction and which, as the majority recognizes, are within the purview of § 52-72. Taken to its logical conclusion, the suggestion that the existence of § 52-592 obviates the need for resort to § 52-72 intimates—incorrectly, in my view—that § 52-72 is a redundant, and unnecessary, remedial statute.

That suggestion nevertheless highlights a principal distinction between the respective views of the majority and this dissenting opinion. We both recognize that, at the end of the day, the plaintiff likely will be able to return to court and proceed with his action against the defendants pursuant to § 52-592. In light of that reality, as well as the ample precedent of this state's highest court commanding a liberal construction of § 52-72, I would permit the plaintiff to serve his amended summons and complaint on those parties, and file that amended summons and complaint with the court nunc pro tunc. I see little reason to engage in a hypertechnical game of procedural "gotcha" when there is no prejudice to the defendants and the only meaningful result is additional cost to the parties and the court.

Furthermore, it bears mentioning that the six day rule embodied in § 52-46a is a vestige of an era long passed, in which horsepower had a literal connotation and the return of process to court often necessitated days of travel. See *Daley* v. *Board of Police Commissioners*, 133 Conn. 716, 719, 54 A.2d 501 (1947) (noting that precursor to § 52-46a originally was enacted in 1744). Since that time, technological advances such as the internal combustion engine and the computer dramatically have altered the manner in which legal process is prepared and returned to our courts. Indeed, almost every aspect of civil practice in this state today is filed electronically with the Superior Court.

Whether such ancient practices serve any meaningful purpose in an age of instantaneous electronic filing is a question beyond the scope of this case, and more properly the purview of the legislature that crafted § 52-46a. It nevertheless sheds additional light on the question of whether strict adherence to the technical requirements of such statutory provisions governing the service and return of process is appropriate in cases in which a

party seeks recourse pursuant to a remedial statute and no prejudice results to the opposing party.

[16] Early in its discussion of the plaintiff's claim, the majority states that "[t]he date the process is returned to court . . . is a matter of record and an historical fact, and may not be altered." Footnote 3 of the majority opinion. The majority provides no authority for that proposition. Later, after noting that the "relevant question, then, is whether the date process is returned is substantive or technical in nature"—a point with which I whole-heartedly agree—the majority again asserts: "We conclude that the date process is returned to court is an historical fact and may not be amended by judicial fiat." Similarly, in the concluding paragraph to its opinion, the majority opines that "[t]o remedy the defect present here" would be "manipulating an historical fact . . . ."

Despite a canvass of Connecticut decisional law, I am unable to find any legal significance attached to that nomenclature as it pertains to the issue at hand, nor has the majority provided any legal authority or explanation therefor. In a general sense, our decisional law has noted that historical facts "constitute a recital of external events and the credibility of their narrators." *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152, 662 A.2d 718 (1995). The date of the plaintiff's original filing is no more an "historical fact" than the May 28, 2013 return date set forth on the summons filed on that date and memorialized as "a matter of record" in the trial court file. Moreover, the majority's proposition appears contrary to the authority vested in our trial judges to permit, in their discretion, the amendment of a party's "pleadings or other parts of the record or proceedings," as stated in in Practice Book § 10-60 (a). See *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 184, 73 A.3d 742 (2013) (whether to allow amendment under § 10-60 [a] "is a matter left to the sound discretion of the trial court" [internal quotation marks omitted]).

Remedial statutes such as § 52-72 necessarily contemplate certain legal fictions that are essential to their operation. As but one example, consider the operation of General Statutes § 52-109, another remedial statute "intended to soften the otherwise harsh consequences of strict construction under the common law [and instruct] courts to be reasonable in their search for technical perfection." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 151, 998 A.2d 730 (2010). Surely, the identity of the plaintiff who commences civil litigation in the Superior Court is as much "a matter of record and an historical fact"; footnote 3 of the majority opinion; as the date that legal process is returned to the court. Yet § 52-109 nevertheless permits the substitution of a different party as the plaintiff in order to "alter the hard and inefficient result that attached to the mispleading of parties at common law." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 150. As our Supreme Court has explained, application of that statute *necessarily relates back to, and corrects retroactively*, prior defects. Id. Accordingly, when § 52-109 is implicated, "the substituted party is let in to carry on a pending suit [and is] treated and regarded for most purposes just as if he had commenced the suit originally. The writ, the complaint, the service of process, attachment made, bonds given, the entry of the case in court, the pleadings if need be, in short all things done in the case by or in favor of the original plaintiff . . . remain for the benefit of the plaintiff who succeeds him, as if done by and for him originally and just as if no change of parties had been made. So far as the defendant is concerned, the same suit upon the same cause of action, under the same complaint and pleadings substantially in most cases, goes forward to its final and legitimate conclusion as if no change had been made." (Internal quotation marks omitted.) Id., 152. There is no good reason to distinguish between the application of a remedial statute to permit the substitution of a different party as plaintiff and the application of a remedial statute to permit the filing of amended process intended solely to ensure compliance with the six day rule of § 52-46a. In both instances, a harsh and inefficient result is averted. In neither instance is the defendant prejudiced by application of the remedial statute.

[17] General Statutes § 52-123 provides: "No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court."

[18] For that reason, I disagree with the majority that circumstantial defects, as discussed in *Rogozinski*, "appear to be similar in nature to the technical

defects our Supreme Court discussed in *New England Road, Inc.* v. *Planning & Zoning Commission*, supra, 308 Conn. 180." Whereas *Rogozinski* plainly indicates that circumstantial defects pertain exclusively to defects in the writ itself; *Rogozinski* v. *American Food Service Equipment Corp.*, supra, 211 Conn. 435; our Supreme Court has recognized that technical defects subject to amendment under § 52-72 are "limited" to "defects in the return date or the return of process to court." *New England Road, Inc.* v. *Planning & Zoning Commission*, supra, 186; *Coppola* v. *Coppola*, supra, 243 Conn. 662 (rejecting claim that § 52-72 "does not encompass a late return of process"); *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 229 Conn. 625–26 (§ 52-72 utilized to cure defective return date).

[19] Respectfully, *Rogozinski* did not state that "the General Assembly specifically considered this issue when it enacted General Statutes § 52-592," as the majority asserts. Rather, the court actually stated: "Ostensibly, the General Assembly specifically considered this issue when it enacted General Statutes § 52-592 . . . ." *Rogozinski* v. *American Food Service Equipment Corp.*, supra, 211 Conn. 435 n.2. The omission of the prefatory word "ostensibly" from the quoted material transforms mere dictum into a definitive statement of law.